IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHLEEN HUNTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0881-N |
| | § | |
| BAYLOR HEALTH CARE SYSTEM, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Baylor Health Care System's ("Baylor") motion to compel arbitration [21] and motion to bifurcate [24]. For the reasons stated below, the Court grants both motions.

### I. ORIGINS OF THE DISPUTE

Plaintiff, Kathleen Hunter, was an employee of Baylor when she was injured while assisting a patient to the restroom. Hunter alleges that when she saw a light fixture falling from the bathroom ceiling, she threw her body over the patient. Hunter alleges that the light fixture then struck her, causing injuries to her head, neck, and left shoulder. After Baylor denied benefits, Hunter filed a breach of contract and denial of ERISA benefits suit, alleging that Baylor should have paid for her shoulder surgery. Hunter also brings state law negligence, gross negligence, and fraud claims.

Baylor now moves to bifurcate Hunter's state law claims from her denial of ERISA benefits and breach-of-contract claims. Baylor also moves to compel arbitration of the state law claims under the Federal Arbitration Act ("FAA").

## II. THE COURT GRANTS BAYLOR'S MOTIONS TO BIFURCATE AND COMPEL ARBITRATION

Baylor alleges that Hunter agreed to arbitrate her state law claims against Baylor. As for Hunter's ERISA and breach-of-contract claims, Baylor states that these claims are specifically carved out from the arbitration agreement and are thus not subject to arbitration. Baylor also notes that before this action was removed to federal court, the state court judge stayed the case and granted an agreed motion to arbitrate. However, after almost a year in arbitration, the state court judge lifted the stay and remanded the case back to state court. Baylor, however, does not explain why the case was remanded. To fill in the gaps in Baylor's description of the procedural history, the Court reviewed the removal documents, including the attached state court documents.

While this action was still pending in state court, the parties agreed to arbitrate the dispute after Baylor represented by affidavit that Hunter had signed an arbitration agreement that applied to all of her claims. But the state court judge lifted the stay and remanded the case once Hunter discovered that Baylor's representation was false. Baylor now admits that Hunter never actually signed any arbitration agreement. Instead, Baylor argues that the underlying arbitration agreement is enforceable, regardless whether Hunter signed it. While

the Court does not approve of Baylor's conduct, the Court agrees that the underlying arbitration agreement is valid and enforceable.

## A. *Legal Standard*

Section 2 of the FAA[1] provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When considering a motion to compel arbitration, the Court must determine "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996) (per curiam). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* at 258. In deciding whether the parties agreed to arbitrate the dispute, "courts apply the contract law of the particular state that governs the agreement." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir.2004) (citation omitted). If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute.

"The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 Fed.

---

[1] Hunter did not respond to Baylor's motion to compel arbitration, so there is no dispute regarding whether the arbitration agreement is governed by the FAA, nor that the arbitration agreement affects interstate commerce. There is similarly no dispute that Texas contract law governs whether there is a valid agreement to arbitrate.

App'x 310, 315 (5th Cir.2012) (per curiam). "[T]here is a 'strong federal policy in favor of enforcing arbitration agreements.'" *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir.2001) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). And because of this strong presumption, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir.2004).

### B. Hunter Agreed to Arbitrate

Baylor alleges that Hunter agreed to arbitrate her state law claims against Baylor through an arbitration provision in the Baylor Health Care System Occupational Injury Benefit Plan. Def.'s App. B-1 [21-5]. As stated above, Baylor admits that Hunter never actually signed the arbitration agreement. The FAA, however, does not require that an arbitration agreement be signed; it only requires that it be in writing. *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.3d 60, 64 (5th Cir. 1987); 9 U.S.C. § 2. Moreover, Texas courts have held that the question of whether a written contract, including an arbitration agreement, must be signed to be binding is a question of the parties' intent. *See, e.g., In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, no pet.); *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987). But in the absence of signatures, other evidence must be presented that is sufficient to show the parties' assent to arbitrate. *Id.* at 210.

Baylor argues that there is a valid agreement to arbitrate because Hunter was provided notice of the arbitration agreement and accepted it by continuing her employment with

Baylor. Under Texas law, "when an employer notifies an employee of changes to the at-will employment contract and the employee 'continues working with knowledge of the changes, he has accepted the changes as a matter of law." *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (quoting *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex.1986)); *see In re Dillard Dept. Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006). An employer asserting an arbitration agreement must prove both notice of the agreement and acceptance by the employee. *See id.*; *Halliburton*, 80 S.W.3d at 568 (citing *Hathaway*, 711 S.W.2d at 229). "But acceptance need not be anything more complicated than continuing to show up for the job and accept wages in return for work. '[W]hen the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law.'" *Kubala v. Supreme Prod. Services, Inc.*, 830 F.3d 199, 203 (5th Cir. 2016) (quoting *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986)).

Baylor provides sufficient evidence showing that Hunter had notice of the agreement and assented to it terms. It is undisputed that Hunter is an at-will employee. As stated above, the arbitration provision is found in the Baylor Health Care System Occupational Injury Benefit Plan. Baylor shows that Hunter became an employee of Baylor in 2005 and was assigned a unique identification number. Def.'s App. B. [21-4]. Also in 2005, Baylor became a non-subscriber to the Texas Workers Compensation Act and created the Baylor Health Care System Safe Choice Plan. Each employee went through a training process about the plan and received an electronic copy of the Baylor Health Care System Occupational

Injury Benefit Plan effective July 1, 2005. Baylor also made printed copies available at the rollout training sessions. Hunter completed the training program on June 27, 2005, using her unique identification number. Def.'s App. B, B-5.

Then in 2012, all Baylor employees, including Hunter, went through another annual training on the Baylor Health Care System Safe Choice Plan and again received an electronic copy of the Baylor Health Care System Occupational Injury Benefit Plan effective July 1, 2009. Hunter completed the training program on January 30, 2012 using her unique identification number. App. B, B-1, B-2, B-5. Hunter therefore had notice of the arbitration provision in the Baylor Health System Occupational Injury Benefit Plan through the training programs.

In addition to these training programs, Baylor employees also received training through Baylor Learning Network ("BLN"). In both 2006 and 2009, Hunter received notifications to take lessons identified as Baylor Health Care System Safety 2006: Safe Choice and Baylor Health Care System Safety 2009: Safe Choice. Def.'s App. B, B-3. Hunter completed these lessons on February 5, 2006 and June 14, 2009, scoring a 100% on the lesson test each time. Def.'s App. B, B-3. Baylor alleges that the purpose of these lessons was to educate Hunter and notify her of the Baylor Health Care System Occupational Injury Benefit Plan. Within the BLN network, the plan would have been available to Hunter to review and read. Baylor argues that Hunter, as an employee, was covered by the plan during the years 2005 to 2016 and accepted the plan, including the arbitration provision, by

continuing her employment with Baylor. The Court holds that Baylor provides sufficient evidence that Hunter agreed to the arbitration provision.

### C. The Delegation Clause Requires an Arbitrator to Determine Whether Hunter's Claims Fall Within the Scope of the Arbitration Agreement

The Court ordinarily determines whether an arbitration agreement covers the claims at issue. However, when an arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *Kubala.*, 830 F.3d at 201. When there is a possible delegation clause, the Court first performs the usual analysis of whether there is a valid agreement to arbitrate, as the Court did above. Then, the only remaining question is whether the purported delegation clause evinces an intent to have the arbitrator decide threshold issues of arbitrability. *Id.* The Supreme Court in *Rent-A-Ctr., W., Inc. v. Jackson* held the following was a valid delegation clause: "The Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, [or] enforceability . . . of this Agreement." 561 U.S. 63, 76 (2010). Here, the arbitration clause states that the following is covered by binding arbitration: "every claim or dispute relating to enforcement or interpretation of any written terms of the requirement for binding arbitration," and "the determination of whether a claim is covered by these provision will be subject to arbitration under this arbitration requirement." Def.'s App. B-1, Bates Label 000956, 000957. While the language used is a bit more clunky than that used in *Rent-A-Center*, the Court holds that this language conveys an intent to have the arbitrator decide whether a given claim falls within the scope of the

arbitration agreement. The Court additionally finds no external legal constraints that would nonetheless preclude arbitration. Accordingly, the Court grants Baylor's motion to compel arbitration of Hunter's state law negligence, gross negligence, and fraud claims.

### D. The Court Stays All Clams Compelled to Arbitration

Because the Court grants Baylor's motion to compel Hunter's state law claims, the Court also grants Baylor's motion to bifurcate Hunter's state law tort claims from her ERISA denial of benefits and breach-of-contract claims. The Court additionally stays the case with respect with respect to Hunter's state law claims.

### CONCLUSION

The Court grants Baylor's motions to compel arbitration of Hunter's state law negligence, gross negligence, and fraud claims.[2] The Court additionally grants Baylor's motion to bifurcate and stays Hunter's state law claims pending arbitration. Hunter's ERISA and breach-of-contract claims are not stayed and remain pending.

Signed July 9, 2019.

David C. Godbey
United States District Judge

---

[2] The Court defers ruling on Baylor's request for attorneys' fees until after an arbitration award is issued.